**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 25, 2007**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-60231

_____

ALEXIS SILVA ROSA,

Petitioner,

versus

ALBERTO R. GONZALES, UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order
of the Board of Immigration Appeals

_____

Before DAVIS, DENNIS, and PRADO, Circuit Judges.

DENNIS, Circuit Judge.

In this immigration case, the petitioner challenges the Immigration and Customs Enforcement's ("ICE")[1] reinstatement of a previous removal order under 8 U.S.C. § 1231(a)(5) as impermissibly retroactive.

We affirm the decision to reinstate the removal order, because the application of 8 U.S.C. § 1231(a)(5) is not impermissibly retroactive in this case. The statute does not impair any rights

_____

[1] ICE is a successor agency to the Immigration and Naturalization Service ("INS") after immigration enforcement functions were transferred from the Department of Justice to the Department of Homeland Security on March 1, 2003. Mortera-Cruz v. Gonzales, 409 F.3d 246, 248 n.1 (5th Cir. 2005).

1

the petitioner possessed when he acted, increase his liability for past conduct, or impose new consequences with respect to past conduct already completed.

## I. Facts and Procedural Background

Petitioner Alexis Silva Rosa,[2] a citizen of Honduras, entered the United States without inspection in 1990. He was apprehended and, after a deportation hearing, ordered to be removed by the Immigration and Naturalization Service ("INS") a few months later. Silva Rosa was deported to Honduras on May 16, 1990. In June 1990, he again entered the United States without inspection. In January 1993, Silva Rosa married Julia Garza, a Mexican national and lawful permanent resident of the United States. In August 1993, Garza filed an immigrant relative visa petition on Silva Rosa's behalf; this petition was approved in March of 1994, but the visa was not immediately available to him. Based on certain priority factors and preferences for different classes of applicants, his visa would only be immediately available to him at some indefinite point in the future.

On September 30, 1996, Congress passed, and the President signed into law, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208, 110 Stat.

---

[2] On certain documents, the petitioner's last name is listed as "Silva Rosa," while on other documents, the name is listed as "Sylva Rosa." We will identify the petitioner as "Silva Rosa" in this opinion.

3009-546. Section 305 of IIRIRA created Section 241(a)(5) in the Immigration and Naturalization Act, codified at 8 U.S.C. § 1231(a)(5), which authorizes the Attorney General to reinstate a prior removal order of an illegally reentered alien and to remove the alien without additional administrative proceedings and limits the opportunity for relief. The effective date of this statute was April 1, 1997. IIRIRA's reinstatement provision extended previously inapplicable reinstatement procedures to aliens, like Silva Rosa, who illegally reentered after being previously deported solely based on their entry into the United States without inspection. Ojeda-Terrazas v. Ashcroft, 290 F.3d 292, 296 (5th Cir. 2002). For this class of aliens, IIRIRA's reinstatement provision also eliminates previously available discretionary relief, such as an adjustment of status, when they are subject to reinstated removal proceedings. See Morales-Izquierdo v. Gonzales, 486 F.3d 484, 494 (9th Cir. 2007).

His visa became immediately available to him in February 1998 after IIRIRA's effective date. In October 2000, Silva Rosa filed an application for adjustment of status. In 2005, after hearing nothing about his case, he went to an ICE office to inquire about his case. At this point, ICE realized that Silva Rosa had been previously deported and had illegally reentered the United States. On February 22, 2005, ICE reinstated Silva Rosa's prior order of removal pursuant to 8 U.S.C. § 1231(a)(5).

Silva Rosa now petitions for review of the reinstatement of the removal order under 8 U.S.C. § 1231(a)(5). He argues that applying section 1231(a)(5) to him is impermissibly retroactive, because he married a lawful permanent resident of the United States and obtained an approved immigrant relative visa petition before IIRIRA's enactment. He argues he is now entitled to and had reasonably expected an adjustment of status as relief against removal, which was available to him under the state of the law pre-IIRIRA. Such relief, he asserts, is a vested right or settled expectation that, by virtue of section 1231(a)(5), has now been impermissibly taken away.

## II. Analysis

### A. Standard of Review

This court has jurisdiction to review the reinstatement of a deportation order. Ojeda-Terrazas, 290 F.3d at 295. Whether the reinstatement provision of IIRIRA may be applied retroactively to Silva Rosa is an issue of law that this court reviews de novo. See Requena-Rodriguez v. Pasquarell, 190 F.3d 299, 302 (5th Cir. 1999) (citing Graham v. Johnson, 168 F.3d 762, 772 (5th Cir. 1999)).

### B. Discussion

The question before this court is whether IIRIRA is impermissibly retroactive as applied to Silva Rosa. To determine whether a statute has an effect that is impermissibly retroactive, we apply a two-step test. First, the court determines "whether

4

Congress has expressly prescribed the statute's proper reach." Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994). This court, in Ojeda-Terrazas, "conclude[d] that it is unclear whether Congress intended that [8 U.S.C. § 1231(a)(5)] apply retroactively." 290 F.3d at 300; see also Fernandez-Vargas v. Gonzales, 126 S. Ct. 2422, 2430 (2006) ("Common principles of statutory interpretation fail to unsettle the apparent application of [8 U.S.C. § 1231(a)(5)] to any reentrant present in the country, whatever the date of return.").

Since the first step does not resolve the question, we proceed to the second step, which analyzes "whether the statute, if applied retroactively, 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" Ojeda-Terrazas, 290 F.3d at 300 (quoting Landgraf, 511 U.S. at 280). The Supreme Court has described the imposition of new duties on completed transactions also as the imposition of new burdensome consequences or disabilities on past conduct. Fernandez-Vargas, 126 S. Ct. at 2432 & n.10. We have also noted that any retroactive effect on "settled expectations" and "vested rights" may be impermissible. See Ojeda-Terrazas, 290 F.3d at 301-302; Griffon v. U.S. Dep't. of Health and Human Servs., 802 F.2d 146, 153-154 (5th Cir. 1986); see also Fernandez-Vargas, 126 S. Ct. at 2427-28. Appellant makes two arguments regarding impermissible retroactive

5

effects; (1) the combination of his marriage to a lawful permanent resident and an approved immigrant relative visa petition would constitute a "vested right" or "settled expectation" that he is still eligible to adjust status as relief from removal and (2) that new consequences, _i.e._, the application of removal proceedings to his class of aliens, are imposed on an already completed past transaction, _i.e._, his illegal reentry into this country without inspection. See Fernandez-Vargas, 126 S. Ct. at 2432 & n.10 (noting the two types of retroactivity claims).

*1. Petitioner's Marriage to A Lawful Permanent Resident and Approved Immigrant Relative Visa Petition Does Not Create A Vested Right or Settled Expectation.*

The petitioner argues that the combination of his marriage to a lawful permanent resident and an approved immigrant relative visa petition constitutes a "vested right" or "settled expectation."

As background, the process to obtain an adjustment of status includes several steps. First, an alien has to establish his eligibility and then he must actually apply. For the situation here, an alien married to a lawful permanent resident, his spouse must first file an immigrant relative visa petition. The petition must then be approved. Once approved, the alien must wait until the visa is available. Due to numerical limitations, visas are made immediately available on a certain date based on several priority factors and preferences. The alien is prima facie eligible for the adjustment of status when his visa becomes

6

immediately available and the alien then applies for adjustment. See generally 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a)(2), 1255(a), 1255(i)(2); Diarra v. Gonzales, 137 F. App'x 627, 632 n.5 (5th Cir. 2005) (per curiam) (unpublished). Once an application is submitted, the Attorney General can then decide whether to adjust the alien's status. 8 U.S.C. § 1255(a). The question before this court is at what stage can an alien obtain a vested right or settled expectation that he can adjust his status as relief from removal.

The Eighth Circuit, in Alvarez-Portillo v. Ashcroft, concluded that the retroactive application of IIRIRA impermissibly impacted the reasonable expectation that an illegal alien could defend against later removal by seeking an adjustment of status, where the alien married a United States citizen. 280 F.3d 858, 866-867 (8th Cir. 2002). The appellant heavily relies on Alvarez-Portillo to argue that marriage to a lawful permanent resident would suffice to create a "reasonable expectation" protected from IIRIRA's retroactive effect.

While the Supreme Court has not explicitly rejected Alvarez-Portillo,[3] the Court's opinion in Fernandez-Vargas casts doubt on

---

[3] The Court left open the question of "whether an alien's marriage or application for adjustment of status before the statute's effective date . . . renders the statute impermissibly retroactive when it is applied to the alien." Fernandez-Vargas, 126 S. Ct. at 2427 n.5 (citing Alvarez-Portillo, 280 F.3d at 862, 867); see also id. at 2433.

7

its continued validity. In fact, the Eighth Circuit recently noted that <u>Fernandez- Vargas</u> effectively overruled <u>Alvarez-Portillo</u>'s conclusion that marriage to a U.S. citizen by itself creates a reasonable expectation of relief from removal that is protected from IIRIRA's reach. <u>See</u> <u>Gonzalez v. Chertoff</u>, 454 F.3d 813, 818 & n.4 (8th Cir. 2006); <u>see also</u> <u>Valdez-Sanchez v. Gonzales</u>, 485 F.3d 1084, 1089 n.4 (10th Cir. 2007).

In <u>Fernandez-Vargas</u>, the Court noted that any expected relief from removal under a "reasonable expectation" or "vested rights" theory must be "something more substantial than inchoate expectations and unrealized opportunities." <u>Fernandez-Vargas</u>, 126 S. Ct. at 2432 n.10. This court has never determined whether a marriage to a lawful permanent resident and an approved immigrant relative visa petition give rise to any vested right or settled expectations of relief from removal. Nevertheless, for continuances of removal proceedings based on an alien's petition for adjustment of status, we note that the right to adjust status and relief from removal are not vested when an applicant only completes the first of several steps to become eligible for discretionary relief, such as filing a labor certification petition. <u>Ahmed v. Gonzales</u>, 447 F.3d 433, 437-439 (5th Cir. 2006). Silva Rosa similarly did no more than the first step towards an adjustment of status with his approval of an immigrant relative visa petition before the effective date of IIRIRA. As

8

with the alien in <u>Ahmed</u>, Silva Rosa was not yet eligible to apply for an adjustment of status. <u>Id.</u> at 438 & n. 3 (noting that Ahmed still needed to complete several steps, including having a visa available to him, before establishing eligibility to apply). In Silva Rosa's case, his visa was not yet available. An adjustment of status application could not have been filed until the visa became available. 8 U.S.C. § 1255(i)(2). Silva Rosa's visa did not become available until after IIRIRA's effective date. Therefore, Silva Rosa was not eligible to apply for an adjustment of status before IIRIRA's effective date, and, thus, rights to an adjustment of status could not vest before IIRIRA's effective date.

Just as in <u>Ahmed</u>, where the initial steps towards eligibility for adjustment of status could not postpone the application of removal proceedings, Silva Rosa's preliminary steps can not postpone the application of changes in the law to his ongoing illegal presence.[4]

Adjustment of status is discretionary and Silva Rosa could not have any settled expectations on when relief would be forthcoming and under what legal conditions. Marriage to a legal permanent resident, like employment, can only create reasonable expectations

---

[4] As with <u>Ahmed</u>, we leave open the possibility that establishing eligibility or significant progress past the first stages would be sufficient to vest rights either in a continuance or retroactivity context. <u>Cf.</u> <u>Ahmed</u>, 447 F.3d at 438-439 & n.3 (emphasizing that petitioner only was at the "first preliminary step").

9

in establishing the eligibility for an adjustment of status application. These reasonable expectations only apply to the alien's successful passage through the preliminary stages of the adjustment of status process at some indefinite point in the future. Before obtaining eligibility to file an application and without actually filing the application, an ineligible alien's expectation that a yet unfiled application would produce an ultimately favorable result at a specified time is unreasonable and unjustified. Compare Ahmed, 447 F.3d at 437-39 & n.3, with Diarra, 137 F. App'x at 632 n.5; see also Gonzalez, 454 F.3d at 818 & n.4; Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 109-110 (4th Cir. 2001).

Here, Silva Rosa's visa became immediately available only after IIRIRA's effective date, and he was therefore eligible to apply for status adjustment only after IIRIRA came into effect, which he did in 2000.[5] Therefore, without establishing eligibility to submit an application before IIRIRA, Silva Rosa only had "inchoate expectations" that a favorable adjustment of status decision would issue before IIRIRA's effective date.

---

[5] Silva Rosa's expectations concerning the availability of relief under the Legal Immigration Family Equity (LIFE) Act of 2000, Pub. L. 106-553, 114 Stat. 2762A-143, and the LIFE Amendments of 2000, Publ L. 106-554, 114 Stat. 2763A-314, after the effective date of IIRIRA are irrelevant to the issue in this case, which concerns IIRIRA's potential impermissible retroactive effects on his "settled expectations" that existed prior to IIRIRA's effective date.

10

When an alien establishes eligibility and actually submits an application for adjustment of status before IIRIRA, our sister circuits have generally concluded that the application suffices as a "completed transaction," and therefore IIRIRA cannot impermissibly apply to these applications retroactively. See Valdez-Sanchez, 485 F.3d at 1090-91 ("Like the aliens in the cases from the First, Seventh, and Eleventh Circuits, Petitioner **applied for** discretionary relief in the form of an adjustment of status prior to IIRIRA's enactment, relief that was available to him at the time.") (emphasis added). The Eighth Circuit in Gonzalez now seems to also adhere to this approach. See Gonzalez, 454 F.3d at 818 ("Also like Fernandez-Vargas, Gonzalez had a six-month grace period between the passage of IIRIRA and its effective date in which he 'could have ended his illegal presence' or **applied for** adjustment of status based on his 1993 marriage.") (quoting Fernandez-Vargas, 126 S. Ct. at 2432) (emphasis added). In this case, Silva Rosa did not submit an application before IIRIRA's effective date, but only obtained an approved immigrant relative visa petition that was not immediately available. Any preliminary steps, such as an approved immigrant relative visa petition in this case, are not equivalent to an actual application and do not give rise to any vested rights or settled expectations. See Labojewski v. Gonzales, 407 F.3d 814, 822 (7th Cir. 2005) ("Although the filing of a visa application is a prerequisite to the filing of an

11

application for adjustment of status, it is not the equivalent of an adjustment of status application and is not the sort of 'completed transaction' that gives rise to vested rights or settled expectations for purposes of the presumption against retroactivity."). The Fourth Circuit reached the same conclusion we reach here on fairly similar facts. See Velasquez-Gabriel, 263 F.3d at 109.

2. *IIRIRA does not create new consequences with regard to any past completed transactions in this case, such as an illegal reentry into the United States.*

While Fernandez-Vargas left open the previous issue, the Supreme Court directly confronted this issue. In Fernandez-Vargas, like Silva Rosa, the petitioner reentered the United States after he was deported. Fernandez-Vargas, 126 S. Ct. at 2427. Living here for over 20 years he married a U.S. citizen in 2001 after IIRIRA's effective date. Id. He filed for adjustment of status in 2001, at which point the Government reinstated removal proceedings against him. Id. He argued unsuccessfully that IIRIRA is impermissibly retroactive because IIRIRA created harsher penalties for a past completed act, his illegal act of reentry. Id. at 2432 & n.10. Silva Rosa makes a similar argument here suggesting that IIRIRA's harsher legal regime, i.e., no adjustment of status defense and other procedural processes, is a new duty or burdensome consequence for his past illegal reentry. The Supreme Court rejected this argument. Instead, Fernandez-Vargas holds that IIRIRA does not

12

retroactively affect the past act of illegal reentry into this country, but rather focuses on the alien's continued illegal presence post-entry.  126 S. Ct. at 2432-33.  The Supreme Court notes:

> [8 U.S.C. 1231(a)(5)] does not penalize an alien for the reentry (criminal and civil penalties do that); it establishes a process to remove him under the prior order at any time after the reentry. . . Thus, it is the conduct of remaining in the country after entry that is the predicate action; the statute applies to stop an indefinitely continuing violation that the alien himself could end at any time by voluntarily leaving the country.

Id. at 2432 (citations and internal quotations omitted). Therefore, IIRIRA does not impermissibly attach new consequences to a completed past act, i.e., an illegal reentry, but rather, with fair notice, changes the legal regime for an alien's ongoing violation. Id. at 2432-33 & n.11.

Accordingly, Silva Rosa cannot also have any settled expectation that his statutory rights and obligations solely attach to his act of illegal reentry and the state of law at that time. Cf. id.  His continued illegal presence incurs continued and changing legal consequences, duties, and rights.  See id. Therefore, when IIRIRA was enacted, a grace period was provided before IIRIRA's harsher legal regime was applied to these ongoing violations.  During that grace period, Silva Rosa "not only [could] have chosen to end his continuing violation and his exposure to the less favorable law, he even had an ample warning that the new law

13

could be applied to him and ample opportunity to avoid that very possibility by leaving the country and ending his violation in the period between enactment of [8 U.S.C. § 1231(a)(5)] and its effective date." Fernandez-Vargas, 126 S. Ct. at 2432. While Silva Rosa may have had limited options to alleviate the impact of IIRIRA's less favorable regime, he at least had the notice and opportunity to pursue those options.

Therefore, IIRIRA does not impose any new consequences on his past act, i.e., his illegal re-entry, but rather gave advance notice on the changing legal regime attached to his continuing violation, i.e., his continued illegal presence in this country. IIRIRA's grace period provided the opportunity to pursue any options, such as vesting any available rights,[6] to alleviate the impact of the new law on his situation. See id. at 2432-433. Thus, Silva Rosa can not now argue that reinstatement of the order is impermissibly retroactive.

## Conclusion

For the these reasons, Silva Rosa's petition for review is DENIED. The order for removal is AFFIRMED.

---

[6] As noted in the previous section, Silva Rosa could not vest any rights or have any settled expectations with regard to preserving his ability to adjust status before the change in law. He did have other, though admittedly harsh, options. He could have, as suggested in Fernandez-Vargas, ended his illegal presence and left the United States. See 126 S. Ct. at 2432.

14