07-0985-ag
Herrera-Molina v. Holder

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

_____

August Term, 2009

(Argued: November 16, 2009                    Decided: March 3, 2010)

Docket No. 07-0985-ag

_____

WILLIAM HERRERA-MOLINA, a.k.a. Eduardo Salazar,

*Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney General of the United States,

*Respondent*.[1]

_____

Before: MINER, CABRANES, and STRAUB, *Circuit Judges*.

_____

Petitioner seeks review of a February 23, 2007 decision of the United States Department

of Homeland Security, Immigration and Customs Enforcement ("ICE"), reinstating a prior order

of deportation pursuant to section 241(a)(5) of the Immigration and Naturalization Act ("INA"),

as added by section 305(a)(3) of the Illegal Immigration Reform and Immigrant Responsibility

---

[1] The Clerk of Court is respectfully directed to amend the caption pursuant to Federal Rule of Appellate Procedure 43(c)(2) to reflect that Attorney General Eric H. Holder, Jr., has been substituted automatically for former Attorney General Michael B. Mukasey.

Act of 1996 ("IIRIRA"), 8 U.S.C. § 1231(a)(5). Petitioner argues that the reinstatement provisions of INA section 241(a)(5) are impermissibly retroactive as applied to him, an alien who illegally reentered the United States and married a United States citizen prior to section 241(a)(5)'s enactment. Petitioner further argues that section 241(a)(5) should not be interpreted as foreclosing certain additional types of relief and that section 241(a)(5) deprives him of his due process rights under the United States Constitution. For the reasons set forth below, we reject petitioner's arguments and DENY the petition for review of the reinstatement of petitioner's prior deportation order. Having completed our review, the stay of removal that this Court previously granted in connection with this petition is VACATED.

_____

HAROUTYUN ASATRIAN, Strasser Asatrian, LLC, Newark, NJ, *for Petitioner*.

ANNA E. NELSON, Trial Attorney for the United States Department of Justice, Office of Immigration Litigation (Kelly J. Walls, Trial Attorney for the United States Department of Justice, Office of Immigration Litigation; Jeffrey S. Bucholtz, Acting Assistant Attorney General for the United States Department of Justice, Civil Division; and Linda S. Wernery, Assistant Director for the United States Department of Justice, Office of Immigration Litigation, *on the brief*), Washington, DC, *for Respondent*.

_____

STRAUB, *Circuit Judge*:

Petitioner William Herrera-Molina seeks review of a February 23, 2007 decision of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), reinstating a prior order of deportation for illegal entry, entered in July 1985 against Herrera-Molina. The first issue before us is whether the reinstatement of removal statute, section 241(a)(5) of the Immigration and Naturalization Act ("INA"), as added by section 305(a)(3) of

the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 8 U.S.C. § 1231(a)(5), is impermissibly retroactive as applied to Herrera-Molina, an alien who illegally reentered the United States and married a United States citizen prior to the statute's enactment. For the reasons set forth below, we hold that section 241(a)(5) is not impermissibly retroactive as applied to Herrera-Molina. We further hold, as discussed below, that section 241(a)(5) forecloses Herrera-Molina from applying for certain additional types of relief and that section 241(a)(5) does not deprive him of due process.

## BACKGROUND

### I. Herrera-Molina's Initial Illegal Entry, Deportation, and Subsequent Illegal Reentry

Herrera-Molina, a native and citizen of Colombia, illegally entered the United States in 1972 at the age of twenty-two. In 1985, he pled guilty to two crimes: (1) simple possession of a controlled substance (cocaine) in Nebraska and (2) fraudulent practices in the third degree in Iowa. On June 6, 1985, Herrera-Molina was served with an Order to Show Cause charging that he had entered the United States without inspection. On July 26, 1985, an Immigration Judge ordered him deported from the United States to Colombia based on the charges contained in the Order to Show Cause. Herrera-Molina waived appeal of that decision, and on October 21, 1985, he was deported from the United States to Colombia.

In 1986, shortly after being deported to Colombia, Herrera-Molina reentered the United States without inspection. He asserts that he then married Rosa Haydee Garofalo in 1986 in a Mormon church in Texas but that the record of their marriage was misplaced by the church. Subsequently, on July 4, 1988, Herrera-Molina and his wife had a child, William Herrera, Jr.,

who is a United States citizen. Garofalo became a naturalized United States citizen in March 1995, and on May 27, 1995, Herrera-Molina remarried Garofalo and obtained an official marriage license from the state of New York.

**II.     Proceedings Below: Herrera-Molina's Applications for Relief and Reinstatement of Herrera-Molina's Prior Order of Deportation**

In late 1997, Garofalo filed on behalf of Herrera-Molina a Petition for Alien Relative ("Form I-130") and an Application to Adjust Status ("Form I-485"). In connection with these applications, Herrera-Molina paid a fee for having entered the United States without inspection. In addition, in 2003, Herrera-Molina filed an Application for Permission to Reapply for Admission into the United States after Deportation or Removal ("Form I-212"), which was denied on March 17, 2004.

On February 23, 2007, ICE reinstated Herrera-Molina's prior order of deportation from its original date, July 26, 1985, pursuant to INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), and placed him in custody. On the same date, an ICE officer interviewed Herrera-Molina, at which time he indicated that he feared for his life if forced to return to Colombia. On April 25, 2007, an asylum officer issued a Reasonable Fear Determination finding that Herrera-Molina was credible and that he had a reasonable fear of returning to Colombia on account of his Mormon faith; in conclusion, the asylum officer opined that Herrera-Molina should be allowed to pursue his withholding of removal claim before an immigration judge. Based on the asylum officer's findings, Herrera-Molina was placed in withholding of removal proceedings before an immigration judge ("IJ"), and on November 8, 2007, the IJ denied his application for withholding of removal. Herrera-Molina appealed the IJ's decision to the Board of Immigration Appeals

4

("BIA") on December 4, 2007.[2] On July 31, 2009, the BIA dismissed Herrera-Molina's appeal, concluding that the IJ was not clearly erroneous in his determination that Herrera-Molina failed to provide credible testimony and evidence in support of his assertion that his family has been targeted for persecution.[3]

On October 5, 2009, we granted Herrera-Molina's motion for a stay of removal pending disposition of Herrera-Molina's present petition for review of the reinstatement of his prior deportation order.

**DISCUSSION**

Herrera-Molina argues that section 241(a)(5)—the provision pursuant to which his prior order of deportation was reinstated—is impermissibly retroactive as applied to him. Herrera-Molina further argues that, even if section 241(a)(5) is not impermissibly retroactive, the statute nevertheless deprives him of due process and we should interpret section 241(a)(5) to allow him to apply for additional types of relief. For the reasons set forth below, we hold that section 241(a)(5) is not impermissibly retroactive as applied Herrera-Molina, does not deprive him of due process, and forecloses him from applying for certain additional types of relief.

**I.      Jurisdiction**

Before reaching the merits of Herrera-Molina's arguments, we first address whether we

---

[2] On December 11, 2007, ICE paroled Herrera-Molina out of detention and placed him under supervision because he established that he was likely to appear at all hearings or other immigration matters and that he posed no danger to the community.

[3] Herrera-Molina has presented no arguments here that challenge the BIA's July 31, 2009 decision, and his counsel indicated at oral argument on November 16, 2009, that Herrera-Molina does not intend to seek review of that decision.

have jurisdiction over this matter. The parties initially disputed our jurisdiction because, at the time that the parties filed their briefs, Herrera-Molina's appeal of the IJ's denial of withholding of removal was still pending before the BIA. Due to the pendency of the appeal, the Attorney General argued that the reinstated order of deportation was not a "final" order of removal over which we could exercise jurisdiction. *See Chupina v. Holder*, 570 F.3d 99, 103-04 (2d Cir. 2009) (noting that our jurisdiction is limited to review of "final" orders of removal and that, when a petitioner's "pending applications [for relief] directly affect whether he may be removed . . . , [the] order of removal is not final until those applications have been resolved by the agency"). After the Attorney General filed his brief, however, the BIA subsequently dismissed Herrera-Molina's appeal of the denial of withholding of removal. As a result, the Attorney General has withdrawn his argument that we lack jurisdiction to review the reinstatement of Herrera-Molina's prior deportation order. *See* Resp't Supp. Letter Br. of Oct. 28, 2009 at 2 ("With the Board's dismissal of Mr. Herrera-Molina's appeal of the denial of withholding of removal, the instant petition for review has ripened from a premature petition into a petition for review of a final order of removal."). Likewise, by supplemental letter brief dated October 29, 2009, Herrera-Molina concurred with the Attorney General's position and represented that he "has elected not to seek review of" the BIA's July 31, 2009 decision dismissing his appeal from the IJ's denial of withholding of removal.

A premature petition for review of a not-yet-final order of removal can become a reviewable final order upon the adjudication of remaining applications for relief and protection, provided that the Attorney General has not shown prejudice. *See Lewis v. Gonzales*, 481 F.3d

125, 128–29 (2d Cir. 2007); *Foster v. INS*, 376 F.3d 75, 77 (2d Cir. 2004) ("Despite his premature petition to us, we exercised jurisdiction noting that the BIA has since affirmed petitioner's removal order and the respondent has not shown prejudice." (internal quotation marks omitted)).  In the present case, the BIA has now rendered a decision resolving Herrera-Molina's appeal of the denial of withholding of removal, and the Attorney General does not claim that he was prejudiced by Herrera-Molina filing a petition for review prior to the BIA's decision—nor do we see how he could have been prejudiced.  Accordingly, even if Herrera-Molina's initial petition were premature, we conclude that the reinstatement of his prior deportation order is now a reviewable final order and proceed to the merits of his arguments.

**II.	The Reinstatement Provisions of Section 241(a)(5)**

Before analyzing Herrera-Molina's specific arguments regarding section 241(a)(5), it is necessary to summarize briefly how section 241(a)(5) changed the law regarding reinstatement of removal orders, formerly known as deportation orders.[4]  Section 241(a)(5) provides that:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).  The statute became effective on April 1, 1997, "the first day of the first month beginning more than 180 days after" it was enacted on September 30, 1996.  *Fernandez-*

---

[4]  As we have previously noted, the terms "order of deportation" and "order of removal" are synonomous. *See Chupina*, 570 F.3d at 104.  "What was formerly known as 'deportation' is now called 'removal' in IIRIRA." *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 33 n.1 (2006).

*Vargas*, 548 U.S. at 35 (internal quotation marks omitted).

Prior to April 1, 1997, only aliens who had previously been deported on certain specified grounds, such as a conviction for an aggravated felony, were subject to having their original deportation orders reinstated, and even those aliens subject to reinstatement could seek certain kinds of discretionary relief. *Id.* at 33-34; *see* 8 U.S.C. §§ 1252(e)-(f), 1254(a) (1994). By contrast, section 241(a)(5) "applies to *all* illegal reentrants, explicitly insulates the removal orders from review, and *generally forecloses discretionary relief* from the terms of the reinstated order." *Fernandez-Vargas*, 548 U.S. at 35 (emphases added).

**III.    Retroactivity Analysis**

As noted earlier, although Herrera-Molina applied for adjustment of status *after* section 241(a)(5) became effective, he illegally reentered the United States and married a United States citizen *before* section 241(a)(5) became effective.   On this basis, Herrera-Molina contends that section 241(a)(5) is impermissibly retroactive as applied to him because "long standing INS practice created a reasonable expectation that Petitioner could defend against later deportation by seeking a discretionary adjustment of status to lawful permanent resident." Opening Br. for Pet'r at 26.  For the reasons discussed below, Herrera-Molina's argument is unavailing.

In one of its seminal retroactivity cases, the Supreme Court noted that "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).   In the same case, however, the Supreme Court observed that Congress may, within constitutional limits, enact laws that

operate retroactively. *Id.* at 267–68. The Court further acknowledged that "[r]etroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies, to correct mistakes, to prevent circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law Congress considers salutary." *Id.*

In light of these principles, the Supreme Court developed a two-step test for determining whether a statute may be applied retroactively. At step one, a "court must ascertain, using the ordinary tools of statutory construction, 'whether Congress has expressly prescribed the statute's proper reach.'" *Martinez v. INS*, 523 F.3d 365, 370 (2d Cir. 2008) (quoting *Landgraf*, 511 U.S. at 280). "If the answer is yes, the inquiry is over . . . ." *Id.* Applying ordinary tools of statutory construction, the Supreme Court in *Fernandez-Vargas* found that Congress did *not* expressly prescribe whether section 241(a)(5) should apply to individuals who illegally reentered the United States before section 241(a)(5) went into effect on April 1, 1997. 548 U.S. at 38-42.

Because the statute contains no express command, we therefore proceed to step two of the analysis, which "ask[s] whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment.'" *Id.* at 37 (alterations in original) (quoting *Landgraf*, 511 U.S. at 278). Under step two of the relevant inquiry, "a statute is impermissibly retroactive" when it (1) "'takes away or impairs vested rights acquired under existing laws'" or (2) "'creates a new obligation, imposes a new duty, or attaches a new

9

disability, in respect to transactions or considerations already past.'"[5] *Martinez*, 523 F.3d at 373

(quoting *Landgraf*, 511 U.S. at 269). When determining whether a statute is impermissibly

retroactive, courts must exercise "commonsense, functional judgment about whether the new

provision attaches new legal consequences to events completed before its enactment." *INS v. St.*

*Cyr*, 533 U.S. 289, 321 (2001) (internal quotation marks omitted). This analysis is further

"informed and guided by familiar considerations of fair notice, reasonable reliance, and settled

expectations." *Id.* (internal quotation marks omitted).

Applying these principles at step two, the Supreme Court held that section 241(a)(5) is

not impermissibly retroactive as applied to aliens who reentered the United States prior to its

enactment. *Fernandez-Vargas*, 548 U.S. at 42–47. The Court noted that, "[w]hile the law looks

back to a past act in its application to 'an alien [who] has reentered . . . illegally,' . . . it is the

conduct of *remaining* in the country after entry that is the predicate action." *Id.* at 44 (emphasis

added). Thus, "[i]t is . . . the alien's choice to continue his illegal presence, after illegal reentry

and after the effective date of the new law, that subjects him to the new and less generous legal

regime, not a past act that he is helpless to undo up to the moment the Government finds him

out." *Id.* The Court further noted that, although section 241(a)(5) "became law on September

30, 1996," it did not become "effective and enforceable" until April 1, 1997. *Id.* at 45.

"Unlawful alien reentrants . . . thus had the advantage of a grace period between the unequivocal

_____

[5] Although the above quoted language is frequently cited when analyzing retroactivity, the Supreme Court has made clear that this language does not provide "the exclusive definition of presumptively impermissible retroactive legislation" and "does not purport to define the outer limit of impermissible retroactivity." *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 947 (1997).

warning that a tougher removal regime lay ahead and actual imposition of the less opportune terms of the new law." *Id.* The Court observed that, "[i]n that stretch of six months, Fernandez-Vargas could have ended his illegal presence and potential exposure to the coming law by crossing back into Mexico." *Id.* at 45. Furthermore, and most pertinent to the present case, the Court noted that Fernandez-Vargas "could have married the mother of his son *and applied for adjustment of status during that period*, in which case he would at least have had a claim (about which we express no opinion) that proven reliance on the old law should be honored by applying the presumption against retroactivity." *Id.* at 46 (emphasis added).

In the present case, Herrera-Molina married a United States citizen before section 241(a)(5) went into effect, but he did not apply for adjustment of status until after section 241(a)(5) became effective. Accordingly, Herrera-Molina's reliance on the Supreme Court's dicta—that petitioner might have had a claim had he married *and* applied for adjustment of status before section 241(a)(5) became effective—is unavailing. It is true that several Courts of Appeals have found section 241(a)(5) impermissibly retroactive as applied to individuals who submitted applications for adjustment of status before section 241(a)(5) became effective. *See Valdez-Sanchez v. Gonzales*, 485 F.3d 1084, 1086, 1090-91 (10th Cir. 2007) (finding section 241(a)(5) impermissibly retroactive as applied to a petitioner who had both applied for and obtained adjustment of status prior to section 241(a)(5)'s effective date); *Faiz-Mohammad v. Ashcroft*, 395 F.3d 799, 809 & n.10, 810 (7th Cir. 2005) (finding section 241(a)(5) impermissibly retroactive as applied to a petitioner who had applied for adjustment of status prior to section 241(a)(5)'s effective date); *Sarmiento Cisneros v. U.S. Attorney Gen.*, 381 F.3d 1277, 1284-85

11

(11th Cir. 2004) (same); *Arevalo v. Ashcroft*, 344 F.3d 1, 4, 15 (1st Cir. 2003) (same). However, unlike the petitioners in those cases, Herrera-Molina, as we just noted, did not apply for adjustment of status before section 241(a)(5)'s effective date.

In addition, the only Court of Appeals decision that found section 241(a)(5) impermissibly retroactive as applied to a petitioner who married, but did not apply for adjustment of status, before section 241(a)(5)'s effective date was an Eighth Circuit decision issued before *Fernandez-Vargas* was decided. *See generally Alvarez-Portillo v. Ashcroft*, 280 F.3d 858 (8th Cir. 2002). After the Supreme Court issued *Fernandez-Vargas*, however, the Eighth Circuit acknowledged that *Alvarez-Portillo* was overruled to the extent that it conflicted with *Fernandez-Vargas*. *See Gonzalez v. Chertoff*, 454 F.3d 813, 816-18 (8th Cir. 2006) (holding that a different immigration provision enacted at the same time as section 241(a)(5) was not impermissibly retroactive as applied to a petitioner who married before the statute became effective and who could have pursued adjustment of status as a defense to removal prior to the statute's effective date); *id.* at 818 n.4 ("To the extent our decision in *Alvarez-Portillo* . . . suggests a different result, it is overruled by *Fernandez-Vargas*.").

Herrera-Molina argues here that *Fernandez-Vargas* did not address whether section 241(a)(5) is impermissibly retroactive as applied to a petitioner who married, but did not apply for adjustment of status, before section 241(a)(5)'s effective date. Accordingly, Herrera-Molina concludes that *Fernandez-Vargas* does not conflict with *Alvarez-Portillo* and, therefore, *Alvarez-Portillo* has not been overruled. Careful analysis of *Alvarez-Portillo*, however, illustrates that its reasoning conflicts with *Fernandez-Vargas* and, therefore, *Alvarez-Portillo* has been overruled.

12

The *Alvarez-Portillo* decision analogized the retroactive effect at issue there, *i.e.*, section 241(a)(5)'s effect on aliens who had reentered before section 241(a)(5)'s enactment, to the retroactivity issue in *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997). *See Alvarez-Portillo*, 280 F.3d at 866. After *Fernandez-Vargas*, it became clear that this analogy was misplaced. *Hughes Aircraft* dealt with the retroactive application of a statutory amendment to "conduct completed before [the amendment's] enactment." 520 U.S. at 952. By contrast, as discussed earlier, *Fernandez-Vargas* made clear that the conduct which section 241(a)(5) regulates is ongoing and is "not a past act that [petitioner] is helpless to undo up to the moment the Government finds him out." *Fernandez-Vargas*, 548 U.S. at 44. Accordingly, the reasoning of *Alvarez-Portillo* conflicts with *Fernandez-Varga*s, and therefore, as the Eighth Circuit itself has recognized, *Alvarez-Portillo* was overruled.

Unlike the Eighth Circuit's *Alvarez-Portillo* decision, the Fourth and Fifth Circuits' decisions on this question—which hold that section 241(a)(5) is *not* impermissibly retroactive as applied to petitioners who married, but did not apply for adjustment of status, before section 241(a)(5)'s effective date—are fully in line with *Fernandez-Vargas*. *Silva Rosa v. Gonzales*, 490 F.3d 403, 407–08 (5th Cir. 2007) (holding that section 241(a)(5) was not impermissibly retroactive because, although the petitioner married and applied for a visa prior to section 241(a)(5)'s effective date, he did not apply for adjustment of status before section 241(a)(5) went into effect); *Velasquez-Gabriel v. Crocetti*, 263 F.3d 102, 109-10 (4th Cir. 2001) (reaching the same result prior to *Fernandez-Vargas*). Implicitly recognizing that *Fernandez-Vargas* foreclosed any argument that section 241(a)(5) applied to "completed" conduct, the Fifth Circuit

13

in *Silva Rosa* instead analyzed whether section 241(a)(5) impaired the "vested rights" of petitioners who had married, but not applied for adjustment of status, before its effective date. As the Fifth Circuit noted, "any expected relief from removal under a 'reasonable expectation' or 'vested rights' theory [of retroactivity] must be 'something more substantial than inchoate expectations and unrealized opportunities.'" *See Silva Rosa*, 490 F.3d at 407 (quoting *Fernandez-Vargas*, 548 U.S. at 44 n.10). In *Fernandez-Vargas*, the petitioner's claims to relief such as cancellation of removal and adjustment of status were "not vested rights," but instead were "contingent" because petitioner "never availed himself of them or took action that enhanced their significance to him in particular." 548 U.S. at 44 n.10 (internal quotation marks omitted). Likewise, the Fifth Circuit reasoned that, even if a petitioner took preliminary steps to become eligible to apply for adjustment of status because of his marriage, his claim for such discretionary relief is contingent and not a "vested right" if he never actually applied for such relief before section 241(a)(5) went into effect. *Silva Rosa*, 490 F.3d at 407-08. Or, as the Fourth Circuit concluded, the petitioner "posit[ed] no way in which his marriage in 'reliance' on preexisting law weakened his immigration status under the new law or hurt his chances of remaining in this country." *Velasquez-Gabriel*, 263 F.3d at 109 (emphasis omitted); *id.* at 110 (concluding further that the petitioner's "failure to apply to adjust his resident status before the new law took effect fatally undermines his contention that § 241(a)(5)'s application to him attaches new legal consequences to events *completed* before its enactment" (internal quotation marks omitted)).

Further weakening Herrera-Molina's retroactivity argument is the Attorney General's contention, which Herrera-Molina fails to rebut, that Herrera-Molina would not have been

14

entitled to adjustment of status even prior to section 241(a)(5)'s enactment. *See* Br. for Resp't at 25-27. The Attorney General argues that, because of his 1985 conviction for possession of cocaine, Herrera-Molina would have been ineligible to adjust his status based upon his marriage to a United States citizen, even before section 241(a)(5)'s enactment. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II) (1994) (providing that aliens convicted of any controlled substance violation are an excludable class of aliens who are ineligible to receive a visa and who shall be excluded from admission into the United States); *id.* § 1182(h) (1994) (providing that only a single offense of simple possession of thirty grams or less of marijuana may be waived and, even then, only in certain circumstances).[6] Herrera-Molina fails to address this argument—that he would have been ineligible for adjustment of status even under the old law—and instead argues that, notwithstanding his convictions, he would have been eligible to apply for suspension of deportation or asylum under the old law.

Herrera-Molina's claim that he reasonably relied on the availability of suspension of

---

[6] On April 30, 2007, Herrera-Molina filed a motion to withdraw his previously entered guilty plea with the District Court of Douglas County, Nebraska, which was denied on the merits on June 14, 2007. Herrera-Molina represents that he appealed this decision to the Court of Appeals for the State of Nebraska, which appeal was pending at the time that he submitted his brief to this court on January 7, 2008. On May 14, 2008, subsequent to the submission of his opening brief to this court, the Court of Appeals for the State of Nebraska remanded the matter to the district court with instructions to dismiss Herrera-Molina's motion to withdraw his guilty plea for lack of jurisdiction. State of Nebraska v. William Herrera, No. A-07-772, slip op. (Neb. Ct. App. May 14, 2008). In light of this discussion about Herrera-Molina's prior guilty plea, it is worth noting that this case is completely distinguishable from *INS v. St. Cyr*, 533 U.S. 289 (2001). In *St. Cyr*, the Supreme Court found that a law that eliminated discretionary relief was impermissibly retroactive as applied to a petitioner who relied on the old law when deciding whether to plead guilty to a crime. Unlike the prior, completed predicate act in *St. Cyr* (the guilty plea), the predicate act here is Herrera-Molina's continued presence in the United States after section 241(a)(5) went into effect, which as discussed earlier, is not a prior, completed act.

15

deportation or asylum fails for two reasons. First, the terms of section 241(a)(5) preclude such relief, *see* Discussion *infra* Part IV, and Herrera-Molina chose to remain in this country despite Congress's warning that a new statutory framework that eliminated such relief was imminent and despite a six month grace period in which to alter his conduct. Second, with respect to suspension of deportation specifically, such relief has been completely repealed (not just in the context of section 241(a)(5)), and we have previously found that the repeal of this relief is not impermissibly retroactive. *See Karageorgious v. Ashcroft*, 374 F.3d 152, 156 (2d Cir. 2004) ("The repeal of suspension of deportation does not . . . attach any new legal consequences to petitioners' pre-IIRIRA conduct. . . . Petitioners had no right to remain living illegally and undetected in the United States. Therefore, they relinquished no rights and acquired no new obligations when they turned themselves in to the INS." (internal citation and quotation marks omitted)).

In sum, section 241(a)(5) does not create new consequences for prior, completed conduct. It is Herrera-Molina's continued presence in the United States that serves as the predicate act to which section 241(a)(5) applies, not some prior, completed conduct that Herrera-Molina is helpless to correct. Nor does section 241(a)(5) impair Herrera-Molina's vested rights. That Herrera-Molina married a United States citizen prior to section 241(a)(5)'s enactment does not alter these conclusions. Even if Herrera-Molina would have been eligible to apply for certain discretionary relief before section 241(a)(5) became effective, he did not make any such application prior to the law's effective date and, therefore, did not have any "vested" right to such relief. For the reasons discussed above, section 241(a)(5) is not impermissibly retroactive as

16

applied to Herrera-Molina.

**IV.    The Scope of Relief Provided By Section 241(a)(5) and Petitioner's Due Process Rights**

In addition to arguing that section 241(a)(5) is impermissibly retroactive, Herrera-Molina argues that section 241(a)(5)'s elimination of certain discretionary relief and the denial of a formal hearing in connection with the reinstatement of his prior deportation order deprived him of his due process rights.  We squarely addressed these issues in *Garcia-Villeda v. Mukasey*, 531 F.3d 141 (2d Cir. 2008).  In *Garcia-Villeda*, we applied the two-prong test enunciated in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984), to determine "whether elimination of the requirement of a hearing before an immigration judge, pursuant to 8 C.F.R. § 241.8 (2001), is consistent with the reinstatement of removal statute." *Garcia-Villeda*, 531 F.3d at 144, 146.  We further considered "whether the reinstatement of removal procedure set forth in 8 C.F.R. § 241.8, both as applied in this case and on its face, comports with the Due Process Clause of the Fifth Amendment; . . . and whether the ICE properly reinstated the underlying deportation order without first adjudicating petitioner's pending applications for [relief]." *Id*. at 144.  We rejected the petitioner's arguments with regard to all of the above issues.

First, we noted that, pursuant to section 241(a)(5)'s terms, "[t]he inquiry in a reinstatement proceeding is limited to whether the 'alien has reentered the United States illegally after having been removed.'" *Id.* at 148 (quoting 8 U.S.C. § 1231(a)(5)).  We further noted that, according to section 241(a)(5), "illegal reentrants are now categorically declared ineligible for

17

any relief from removal."[7] *Id.* Accordingly, we had "little difficulty" granting *Chevron* deference to the government's interpretation of section 241(a)(5), as set forth in 8 C.F.R. § 241.8. *Id.* at 148–49. We found the summary procedure set forth in 8 C.F.R. § 241.8, which eliminated the requirement of a hearing before an immigration judge, "quite appropriate [because] the only issues to be determined are . . . the alien's identity, the existence of a prior removal order, and whether the alien has unlawfully reentered." *Id.* at 148 (internal quotation marks omitted). Furthermore, we rejected the petitioner's due process challenges to the reinstatement order because he "admitted before the ICE and before us all of the facts necessary to warrant reinstatement under INA § 241(a)(5), i.e., that he is an alien who reentered the U.S. illegally after being previously deported." *Id.* at 149 (internal quotation marks omitted); *id.* ("None of the additional procedural protections he demands . . . would have changed this."). Finally, we rejected the petitioner's claim that, "before the reinstatement order could be issued, he was entitled to adjudication on the merits of his applications for [relief] filed with the DHS . . . before the reinstatement order was issued." *Id.* at 150. We concluded that "we cannot disregard the statutory text" which provides that "[a]n illegal reentrant 'is not eligible and may not apply for any relief' under the INA." *Id.* at 151 (emphasis omitted) (quoting 8 U.S.C. § 1231(a)(5)). *But see supra* **[p. 18 n.7]**.

---

[7] We did note, however, that 8 C.F.R. § 241.8 allows "an alien subject to reinstatement to (1) 'express[] a fear of returning to the country designated in [the reinstatement] order'; or (2) apply for adjustment of status under either the Haitian Refugee Immigrant Fairness Act of 1998 or the Nicaraguan Adjustment and Central American Relief Act." *Garcia-Villeda*, 531 F.3d at 151 n.8 (alterations in original) (quoting 8 C.F.R. § 241.8(e)).

In light of *Garcia-Villeda*, we reject Herrera-Molina's argument that he is entitled to apply for additional relief. Herrera-Molina has already applied for withholding of removal, the only relevant relief apparently available to him, based on his fear of returning to Columbia, and that application has been denied. According to the relevant statutory and regulatory provisions, relief other than withholding of removal, *e.g.*, asylum or cancellation of removal, is not available to this petitioner. As we noted in *Garcia-Villeda*, 8 C.F.R. § 241.8 allows "an alien subject to reinstatement to (1) 'express[] a fear of returning to the country designated in [the reinstatement] order'; or (2) apply for adjustment of status under either the Haitian Refugee Immigrant Fairness Act of 1998 or the Nicaraguan Adjustment and Central American Relief Act." 531 F.3d at 151 n.8 (alterations in original) (quoting 8 C.F.R. § 241.8(e)). Herrera-Molina does not argue that he is entitled to apply for adjustment of status under the Haitian Refugee Immigrant Fairness Act or the Nicaraguan Adjustment and Central American Relief Act. Moreover, with regard to those aliens who express a fear of returning to the country designated in the reinstatement order, the provisions of 8 C.F.R. § 241.8 state *only* that there is an "[e]xception for withholding of removal" and do not state that there is any exception for asylum. *See* 8 C.F.R. § 241.8(e). In this context, "[i]f an asylum officer determines that an alien [subject to a reinstatement order] has a reasonable fear of persecution or torture, the officer shall so inform the alien and issue a Form I-863, Notice of Referral to the Immigration Judge, for full consideration of the request for withholding of removal *only*." 8 C.F.R. § 208.31(e) (emphasis added). With regard to this screening process, the Department of Justice has made clear that "aliens subject to reinstatement of a previous removal order under section 241(a)(5)" are "*ineligible for asylum*." 64 Fed. Reg.

19

8478, 8485 (Feb. 19, 1999) (emphasis added). Accordingly, we reject Herrera-Molina's claim that he is entitled to apply for asylum or additional types of relief other than withholding of removal.[8]

Furthermore, we reject Herrera-Molina's argument that section 241(a)(5) deprives him of due process. Like the petitioner in *Garcia-Villeda*, Herrera-Molina admits all of the facts necessary to warrant reinstatement under section 241(a)(5): he was deported in 1985, illegally reentered the United States thereafter, and was apprehended while present in the United States. In addition, Herrera-Molina does not allege any impropriety in the underlying 1985 deportation proceedings and does not argue that those earlier proceedings deprived him of due process.[9] As in *Garcia-Villeda*, no "additional procedural protections . . . would have changed" the determination that Herrera-Molina was subject to reinstatement of the prior deportation order.

---

[8] The Supreme Court in *Fernandez-Vargas* suggests in dicta that the above statutory and regulatory provisions "rais[e] the possibility of asylum." *See Fernandez-Vargas*, 548 U.S. at 35 n.4. It is true that an alien who "expresses a fear of returning to the country" designated in the reinstatement order "shall be referred to an asylum officer for a reasonable fear determination." 8 C.F.R. § 208.31(a), (b). Furthermore, if that asylum officer determines that the alien has established "a reasonable fear of persecution or torture"—a showing relevant to establishing eligibility for asylum—the alien is referred to an Immigration Judge. 8 C.F.R. § 208.31(e). However, the regulations are clear that this referral to an Immigration Judge is for the purpose of considering the alien's "request for *withholding of removal only*." *Id.* (emphasis added). Accordingly, Herrera-Molina's counsel properly conceded at oral argument that, if we find that section 241(a)(5) is not impermissibly retroactive as applied to Herrera-Molina, he would be ineligible to apply for asylum under the relevant statutory and regulatory provisions.

[9] Because Herrera-Molina does not challenge the process afforded him in connection with his underlying deportation order, we need not consider the issue of whether we would have jurisdiction to review legal or constitutional challenges to the validity of that underlying deportation order. *See Debeato v. Attorney Gen.*, 505 F.3d 231, 234–35 (3d Cir. 2007); *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513-14 (5th Cir. 2006).

20

531 F.3d at 149. Accordingly, because Herrera-Molina has failed to "allege some cognizable prejudice fairly attributable to the challenged process," *id.* (internal quotation marks omitted), we conclude that he was not deprived of due process with regard to the reinstatement of his prior deportation order.

## CONCLUSION

For the reasons set forth above, Herrera-Molina's petition for review of the ICE order reinstating his prior order of deportation is DENIED. Having completed our review, the stay of removal that this Court previously granted in connection with this petition is VACATED.