HARDIMAN, Circuit Judge,
concurring in the judgment.
Under Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we do not defer to an agency’s construction of a statute when “Congress has directly spoken to the precise question at issue.” Id. at 842, 104 S.Ct. 2778. At issue in this appeal is whether Yoselin Cazun may apply for asylum even though she is the subject of a reinstated removal order. To answer that question we must analyze two provisions of the Immigration and Naturalization Act: 8 U.S.C. § 1158 (the “asylum provision”) and § 1231(a)(5) (the “reinstatement bar”). The asylum provision permits “[a]ny alien” to apply for asylum, while the reinstatement bar precludes aliens subject to reinstated removal orders from applying for “any relief.” Based on the text, history, and structure of the statute, I would hold that the reinstatement bar precludes Cazun from applying for asylum. This interpretation fulfills our duty to “fit, if possible, all parts [of this statute] into an harmonious whole.” FDA v. Brovm & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (citation omitted).
Three of our sister courts agree that the INA precludes aliens like Cazun from applying for asylum. See Jimenez-Morales v. *262 Att’y Gen., 821 F.3d 1307, 1310 (11th Cir. 2016) (holding an alien with a reinstated removal order “is not eligible for and cannot seek asylum”); Ramirez-Mejia v. Lynch, 794 F.3d 485, 490 (5th Cir. 2015) (holding the reinstatement bar, “read plainly, broadly denies all forms of redress from removal, including asylum”), pet’nfor reh’g en banc denied, 813 F.3d 240 (5th Cir. 2016); Herrera-Molina v. Holder, 597 F.3d 128, 138-39 (2d Cir. 2010) (accepting regulations applying restrictions to aliens subject to reinstatement removal orders as correct statutory interpretations); see id. at 137 (discussing “the availability of suspension of deportation or asylum” and noting “the terms of [the reinstatement bar] preclude such relief’). But see Perez-Guzman v. Lynch, 835 F.3d 1066, 1076-77 (9th Cir. 2016) (finding the statute ambiguous and deferring to the Agency). And while I agree with the Ninth Circuit in Perez-Guzman and with the Majority that the. Agency’s interpretation here is reasonable, I would join the Eleventh, Fifth, and Second Circuits in finding that it is compelled by the statute.
I
The provisions at issue in this appeal were codified in 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, Div. C, 110 Stat. 3009 (1996). IIR-IRA recodified the asylum provision at § 1158 and enacted for the first time the. reinstatement bar codified at § 1231(a)(5), which prohibits illegal reentrants from applying for “any relief’ under the statute.
The asylum provision as recodified in IIRIRA retained its original scope and was reformatted in two sections. One section provides that “[a]ny alien ..., irrespective of such alien’s status, may apply for asylum” if present in the country, and the other section lists some exceptions to the general provision. § 1158(a)(l)-(2).
IIRÍRA also implemented a more efficient process for the reinstatement of removal orders. Before 1996, those who entered the United States illegally after having been deported typically were placed in a new round of regular deportation proceedings. Fernandez-Vargas v. Gonzales, 548 U.S. 30, 33-34, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). IIRIRA streamlined the system by reinstating pri- or orders of removal as of their original start date, thus hastening the removal process.[1] As such, aliens with reinstated orders may be removed “at any time after the reentry,” without new administrative hearings or any opportunity for review. § 1231(a)(5). Most important for purposes of this appeal, reinstated orders disqualify those who reenter after prior removal from obtaining “any relief under this chapter.” Id.
As the Supreme Court noted, the reinstatement bar “toed a harder line” by “applying] to all illegal reentrants.” Fernandez-Vargas, 548 U.S. at 34-35, 126 S.Ct. 2422 (emphasis added). This “harder line,”- id. at 34, 126 S.Ct. 2422, punishes and deters the criminal act of reentering the country illegally, see 8 U.S.C. § 1326. See generally In re Briones, 24 I. & N. Dec. 355, 370-71 (B.I.A.' 2007) (“[0]ne of the chief purposes of the IIRIRA ... was to overcome the problem of recidivist immigration violations by [inter alia] escalating the punitive consequences ... of illegal reentry.” (citing IIRIRA §§ 105(a)(2), 301(b)(1), 303(a), 305(a)(3), (b)(3), 324(a), 326, 332, 353(b), which “expedite the detec *263 tion, deterrence, and punishment of recidivist immigration violators”)).
The Immigration and Naturalization Service implemented the reinstatement bar by promulgating regulations that established expedited removal proceedings for illegal reentrants subject to a prior removal order, 8 C.F.R. § 241.8(a), (c), and precluded those aliens from filing asylum • applications, id. § 208.31(e) (allowing reasonable fear proceedings “for full consideration of the request for withholding of removal only” (emphasis added)).
II
At Chevron Step One, we use “traditional tools of statutory construction” to ascertain whether “Congress had an intention on the precise question.” Hanif v. Att’y Gen., 694 F.3d 479, 483 (3d Cir. 2012) (citation omitted). In doing so, we “consider the text and structure of the statute in question.” United States v. Geiser, 527 F.3d 288, 292 (3d Cir. 2008).
Cazun and the Government agree that the statute is clear, but they disagree about whose position it supports. Cazun . claims she should prevail because the asylum provision states that “[a]ny alien” may apply for asylum, “irrespective of such alien’s status.” 8 U.S.C. § 1158(a)(1). For its part, the Government argues that Ca-zun is ineligible for asylum because she is subject to a reinstated removal order and the reinstatement bar says she is “not eligible and may not apply for any relief’ under Chapter 12 of Title 8 of the United States Code, which includes the asylum provision. 8 U.S.C. § 1231(a)(5).
We previously found both sections at issue to be clear when read independently. We held in Marineas v. Lewis that “under the plain meaning of [the asylum provision], Congress clearly and unambiguously intended that the Attorney General establish a uniform asylum procedure that is to be applied irrespective of an alien’s status.” 92 F.3d 195, 201 (3d Cir. 1996) (disallowing unequal procedures for alien stowaways). Marineas does not control this appeal, however. As my colleagues note, Maj. Op. at 258-59, Marineas did not analyze the reinstatement bar because it had not yet taken effect. After our decision in Marineas, in a case dealing with the reinstatement bar, we assumed in dicta that “asylum is not available to aliens who face reinstatement of a prior order of removal [under] 8 U.S.C. § 1231(a)(5).” Gonzalez-Posadas v. Att’y Gen., 781 F.3d 677, 680 (3d Cir. 2015). Because neither Marineas nor Gonzalez-Posadas analyzed the interplay between the asylum provision and the reinstatement bar, this appeal requires us for the first time to “attempt to harmonize” two statutory provisions that seem, at first blush, to conflict with one another. N.J. Air Nat’l Guard v. Fed. Labor Relations Auth., 677 F.2d 276, 282 (3d Cir. 1982); see also Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) (“The courts are not at liberty to pick and choose among congressional enactments, and ... it is the duty of courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.”).
A
Our effort to harmonize these provisions begins with the text of the statute. CSX Transp., Inc. v. Ala. Dep’t of Revenue, 562 U.S. 277, 283, 131 S.Ct. 1101, 179 L.Ed.2d 37 (2011). As the Majority notes, both provisions use the word “any,” which typically has an “expansive meaning.” Maj. Op. at 255 (citing United States v. Gonzales, 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997)). Yet “neither section is as broad as it first seems.” Id.
*264 After stating that any alien, irrespective of status, may apply for asylum, the asylum provision then lists several exceptions preventing certain aliens from doing so in specific circumstances. See § 1158(a)(2). It is thus clear that some aliens may not apply for asylum. In a similar way, after the reinstatement bar states that aliens with reinstated removal orders may not apply for any relief, the statute goes on to allow them to seek withholding of removal to certain countries. See § 1231(b)(3)(A). Thus, that section does not bar all types of relief. So neither provision is absolute, and both may be limited by other provisions. Therefore, we must turn to canons of construction and the statute’s structure to see whether the two provisions can be harmonized.
B
Cazun and the Government both invoke the “specificity” canon of statutory construction. Maj. Op. at 256. Simply put, this means that a “narrow, precise, and specific” statutory provision is not overridden by another provision “covering a more generalized .spectrum.” Radzanower v. Touche Ross & Co., 426 U.S. 148, 153, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976); see also Anto-nin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 183 (2012) (explaining that because the more specific text “comes closer to addressing the very problem posed by the case at hand[, it] is thus more deserving of credence”).
Instead of challenging this canon of construction, the parties each claim that their favored provision is more specific than the other one. Although both parties provide reasonable arguments,[2] I am convinced that the reinstatement bar is more specific than the asylum provision. While the asylum provision establishes general rules for asylum applications, the reinstatement bar deals specifically with a particular subset of illegal aliens: those who are subject to reinstated removal orders. As such, it is most naturally read as an exception to the “general permission,” Scalia & Garner, supra, at 183, to apply for asylum. By making relief unavailable to certain aliens, the reinstatement bar nullifies every relief provision to which it applies with respect to certain persons no longer eligible for that relief.
Cazun argues that the reinstatement bar is a “blunt instrument” that is less detailed, and thus less specific, than the asylum provision. Cazun Br. 17-18.1 disagree. The reinstatement bar’s application to all of Chapter 12 does not defeat its specificity. When Congress raised the age at which Americans could receive full Social Security benefits, see Social Security Amendments of 1983, Pub. L. No. 98-21, § 201, 97 Stat. 65 (1983) (codified at 42 U.S.C. § 416(0(1)), the law affected millions of people. But its broad applicability did nothing to dilute its specificity. In a similar way, the reinstatement bar applies to a large but specific group of people (aliens with reinstated removal orders) and deprives them of relief for which they would otherwise qualify—in this case, asylum.
As the Majority suggests, the asylum provision can also be seen as specific insofar as it deals with just one of many types of relief. Maj. Op. at 256; see also Perez-Guzman, 835 F.3d at 1075-76. But focusing the specificity inquiry on the type of relief available as opposed to the type of *265 person affected creates tensions in the statute that my interpretation does not.
First, the reinstatement bar creates an exception from the general availability of multiple forms of relief (of which asylum is one), whereas the asylum provision simply establishes rules for asylum applications and makes them generally available to “[a]ny alien,” subject to exceptions. If asylum (and every other form of relief) were deemed more specific than the reinstatement bar, all forms of relief found in Chapter 12 would be unaffected by the reinstatement bar, essentially nullifying that section in violation of another canon of construction: “the cardinal principle that we do not cripple statutes by rendering words therein superfluous.” Rojas v. Att’y Gen., 728 F.3d 203, 209 (3d Cir. 2013); see also id. at 210 (“It is our duty to give effect, if possible, to every clause and word of a statute.” (quoting Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001))).
Second, creating a requirement that all forms of relief in Chapter 12 must cross-reference the reinstatement bar in order for it to apply, as Cazun recommends, would run afoul of the statutory scheme. Cazun claims that because the asylum provision enumerates some exceptions, see § 1158(a)(2), (b)(2)(A), but does not reference the reinstatement bar among them, Congress did not intend to make illegal reentrants ineligible for asylum. But if the reinstatement .bar applied only to types of relief that cross-referenced it, it would never apply. See Gov’t Br. 29 (noting that none of the forms of relief under the INA specifically refers to reinstatement of removal). Such an interpretation not only would render the reinstatement bar superfluous, it would also contravene the Supreme Court’s observation that the reinstatement bar “generally forecloses discretionary relief from the terms of the reinstated [removal] order,” Fernandez-Vargas, 548 U.S. at 35, 126 S.Ct. 2422.
Indeed, the Supreme Court already recognized that Congress limited at least some types of relief via the reinstatement bar when it “held that aliens subject to reinstatement orders are ineligible for adjustments of status[ ] ... [even though] the adjustment-of-status provision[ did] not mention reinstatement orders.” Ramirez-Mejia, 794 F.3d at 490 (describing Fernandez-Vargas, 548 U.S. at 46-47, 126 S.Ct. 2422, and 8 U.S.C. § 1255 (adjustment-of-status provision)). It so held despite the fact that the adjustment-of-status provision—like the asylum provision—does not reference the reinstatement bar among its other enumerated exceptions. Provisions like the reinstatement bar, which by their terms create exceptions from many other sections, need not list every Section to which they apply, nor must they be explicitly cross-referenced in the excepted provisions. Congress may choose to limit one section of a statute via another section without an explicit cross-reference to or amendment of the section to be limited. See id. (“The judiciary’s role is not to question the method of an amendment but only to interpret its effect.”).
C
Cazun’s remaining counterarguments are also unavailing.
The reinstatement bar speaks to the more specific problem Congress meant to address even if Cazun is correct that in some years those who are subject to reinstatement removal orders outnumber those who apply for asylum. As with the Social Security example mentioned previously, the numerosity of the class sheds no light on the specificity of the statute. Moreover, not every alien who submits an asylum application is subject to a reinstated removal order, which is reflected by *266 every successful asylum applicant since 1996. Thus, there are necessarily fewer asylum applications from aliens with reinstated orders than the total number of asylum applications. The class of aliens who seek asylum despite reinstated removal orders, then, is still narrower than the class of aliens who seek asylum generally.
The policy concerns created by Cazun’s changed circumstances should not sway our opinion either. Congress decided to “toe[ ] a harder line” with respect to “illegal reentrants,” Fernandez-Vargas, 548 U.S. at 34-35, 126 S.Ct. 2422, and to discourage initial illegal entry by removing some options upon illegal reentry. And the fact that withholding of removal is available to Cazun and those like her mitigates somewhat the concerns about “dire humanitarian consequences,” Perez-Guzman, 835 F.3d at 1081. And as my colleagues note, asylum seekers may declare themselves at the border without illegally reentering the country after they have been removed. See Maj. Op. at 261 n.20.
Congress’s focus on illegal reentry would also explain the disparate treatment of aliens successfully removed previously (even if changed circumstances result) from those who have not yet been removed. See Maj. Op. at 260-61. It is only the former group that commits the action which triggers reinstated removal orders: “reenter[ing] the United States illegally after having been removed or having departed voluntarily.” § 1231(a)(5).
Ill
Because the statute is not “silent or ambiguous” as to whether aliens with reinstatement orders of removal may apply for asylum, I would enforce the statute as written, rather than defer to the Agency’s interpretation. Chevron, 467 U.S. at 843, 104 S.Ct. 2778. Section 1231(a)(5)—the reinstatement bar—specifically prevents the subclass of aliens of which Cazun is a member from applying for any relief under Chapter 12 of Title 8, which includes asylum. Nothing about this section is ambiguous, nor is there an implication that Congress intended a “legislative delegation to [the Agency] on [the] particular question” of the effect of reinstated removal orders. Chevron, 467 U.S. at 844, 104 S.Ct. 2778. Unlike the “definitional issue” in Chevron, id. at 858,104 S.Ct. 2778, in which the lack of definition of “stationary source” meant that “Congress did not actually have an intent regarding the applicability of [the relevant environmental] concept to the permit program,” id. at 845, 104 S.Ct. 2778, Congress here has expressed its intent to disqualify illegal reentrants from applying for asylum, among other forms of relief.
The Majority opinion eloquently describes the facts, the question of statutory interpretation presented, and the various legal arguments made by both sides. I agree with my colleagues that the Agency’s interpretation of IIRIRA is reasonable, and would join them in full if I believed this question should be decided under Step Two of Chevron. I concur only in the judgment, however, because I think we should end our analysis at Step One.
It is true that the apparent conflict in this case presents a difficult question of statutory interpretation, but our traditional tools of statutory construction answer it. Unless we find silence or ambiguity after employing these tools, we must answer even difficult interpretative questions. See Scialabba v. Cuellar de Osorio, — U.S. -, 134 S.Ct. 2191, 2214, 189 L.Ed.2d 98 (2014) (Roberts, C.J., concurring in judgment) (“[D]eference is [not] warranted because of a direct conflict between [two] clauses.... [Statutory] conflict is not ambiguity....”). The reinstate *267 ment bar singles out a subclass of aliens— illegal reentrants subject to reinstated removal orders—and deprives them of various forms of relief available under Chapter 12, including asylum.
More than merely reasonable, the Agency’s view that Cazun is ineligible for asylum is compelled by the statute. For that reason, I concur in the judgment.

. IIRIRA also consolidated deportation and exclusion proceedings into one "removal” proceeding. See 8 U.S.C. § 1227. The reinstatement provision further streamlines this removal process for aliens with reinstated removal orders.

. Justice Scalia and Mr. Garner recognize that in some cases, “it is difficult to determine whether a provision is a general or specific one.” Scalia & Garner, supra, at 187. Sometimes two provisions may be seen as more specific each in their own way. See id. at 187-88 (citing Radzanower, 426 U.S. at 159, 96 S.Ct. 1989 (Stevens, J., dissenting)).